## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **Crestone IP Management, LLC** | |
| **Plaintiff,** | **Civil Action No. 2:26-cv-584** |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| **Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Crestone IP Management, LLC ("Crestone" or "Plaintiff") brings this Complaint against Defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Semiconductor, Inc. ("SSI") (collectively, "Samsung" or "Defendants") for infringement of U.S. Patent Nos. 10,771,012 ("the '012 patent"), 8,261,072 ("the '072 patent"), 9,288,534 ("the '534 patent"), and 7,599,231 ("the '231 patent") (collectively, the "Asserted Patents"). Plaintiff, on personal knowledge of its own acts, and on information and belief as to all others based on investigation, alleges as follows:

## SUMMARY OF THE ACTION

1. This is a patent infringement suit relating to Samsung's unauthorized and unlicensed use of the Asserted Patents. The technologies claimed in the Asserted Patents are used by Samsung in certain of its smartphones, tablets, laptops, and solid-state hard drives (collectively, the "Accused Products").

1

2.      Crestone brings this action to put a stop to Samsung's unauthorized and unlicensed use of the inventions claimed in the Asserted Patents.

## THE PARTIES

3.      Plaintiff Crestone is a limited liability company organized under the laws of the State of Delaware with a place of business at 401 N. Michigan Ave. Chicago, IL 60611.

4.      Crestone is led by a team of experienced technology and intellectual property professionals, many of whom possess more than twenty years of experience in the telecommunications, semiconductor, licensing, and patent industries.  Members of Crestone's leadership have participated in the development, management, licensing, and monetization of significant patent portfolios throughout their careers.

5.      Several members of Crestone's leadership trace their professional roots to organizations that played important roles in the evolution of modern telecommunications technologies, including Bell Labs, Nortel Networks, and other industry pioneers.  Through this experience, Crestone maintains a direct connection to generations of innovation that helped shape today's communications and semiconductor industries.

6.      Crestone acquired the Asserted Patents as part of its mission to preserve, manage, and monetize valuable intellectual property assets developed by pioneering technology companies.  Crestone thus became the successor-in-interest to the rights associated with, and now holds all substantial rights in, the Asserted Patents.

7.      The Asserted Patents originate from a distinguished portfolio of semiconductor and telecommunications technologies developed over decades by Microchip Technology Incorporated and its affiliates, including but not limited to Microchip Technology Ireland Limited, Atmel Corporation, Silicon Storage Technology, and Microsemi Corporation.  These

companies have long been recognized as leaders in the design and development of microcontrollers, semiconductor devices, embedded systems, communications technologies, and related innovations that have become integral to modern electronic products.

8.     Through decades of research and development, Microchip Technology Incorporated, together with its subsidiaries and affiliates, including companies such as Atmel Corporation and Microsemi Corporation, invested substantial resources in creating technologies that advanced the state of the art in semiconductor design, communications systems, signal processing, embedded control systems, and related fields.  These innovations have been incorporated into countless commercial products deployed throughout the world.

9.     On information and belief, SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtonggu, Suwon, Gyeonggi-Do, 443-742, Republic of Korea.

10.     On information and belief, SEC is the worldwide parent corporation for SEA and SSI, and is responsible for the infringing activities identified in this Complaint.

11.     On information and belief, SEC is also involved in the design, manufacture, and provision of products sold by SEA.

12.     On information and belief, SEA is a corporation organized and existing under the laws of the State of New York.  SEA is a wholly owned subsidiary of SEC.

13.     Defendant SEA maintains facilities at 6625 Excellence Way, Plano, Texas 75023.

14.     SEA may be served with process through its registered agent for service in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

15.     On information and belief, SEA, collectively with SEC, operates the Device Solutions division, which is involved in the design, manufacture, use, offering for sale and/or sales of one or more Accused Products.

16.     On information and belief, SSI is a corporation organized and existing under the laws of the State of California.  On information and belief, SSI is a wholly owned subsidiary of SEA.  *See Samsung Electronics Co., Ltd., v. Netlist, Inc.*, No. 1:25-cv-626 (D. Del.), Dkt. 5 (Samsung's corporate disclosure statement providing that "SSI is a wholly-owned subsidiary of SEA").

17.     On information and belief, Defendant SSI maintains facilities at 6625 Excellence Way, Plano, Texas 75023.

18.     Defendant SSI may be served with process through its registered agent National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

19.     On information and belief, SSI, collectively with SEC, operates the Device Solutions division, which is involved in the design, manufacture, use, offering for sale and/or sales of one or more Accused Products.

20.     On information and belief, Samsung develops, designs, and/or manufactures products in the United States, including in this District, that use the structures and/or methods of the Asserted Patent; and/or use structures and/or methods of the Asserted Patents in the United States, including in this District, to make products; and/or distribute, market, sells, or offers to sell in the United States and/or import products into the United States, including in this District, that were manufactured using the patented methods or include the patented structures. Additionally, Samsung introduces those products into the stream of commerce knowing that they will be sold and/or used in this District and elsewhere in the United States.

## JURISDICTION AND VENUE

21.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

22.    This Court has personal jurisdiction over Samsung under the laws of the State of Texas, due at least to their substantial business in Texas and in this District. Samsung has purposefully and voluntarily availed themselves of the privileges of conducting business in the United States, in the State of Texas, and in this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in this District. In the State of Texas and in this District, Samsung, directly and/or through intermediaries: (i) performs at least a portion of the infringements alleged herein; (ii) develops, designs, and/or manufactures products according to claims of each Asserted Patent; (iii) distributes, markets, sells, or offers to sell products that embody the Asserted Patent; and/or (iv) imports products formed according to the processes/methodologies of the Asserted Patents.

23.    On information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 with respect to Samsung because Samsung has committed, and continues to commit, acts of infringement in this District and has a regular and established place of business in this District, including at (for example) 6625 Excellence Way in Plano, TX for all of SEC, SEA, and SSI.

24.    The Samsung building at 6625 Excellence Way utilizes signage that does not distinguish between SEC, SEA, and SSI.  SEC, SSI, and SEA also utilize a common "Samsung" website.

25.    On information and belief and to any extent that SSI alleges that 6625 Excellence Way, Plano Texas 75023 is not its regular and established place of business under Section 1400(b), SSI (along with SEC) has ratified this location as a regular and established place of business.

26.    Samsung has repeatedly conceded venue in this District.  *See, e.g.*, Answer at ¶ 10, *Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-333, Dkt. 43 (E.D. Tex. Apr. 27, 2020); Answer at ¶ 29, *Acorn Semi, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-347, Dkt. 14 (E.D. Tex. Feb. 12, 2020).

## U.S. PATENT NO. 10,771,012

27.    The '012 patent is titled "Hybrid RC/crystal oscillator."  A true and correct copy of the'012 patent is attached as Exhibit A.

28.    The '012 patent issued to inventor Jason Sachs on September 8, 2020 from U.S. Patent Application Ser. No. 16/587,509, filed September 30, 2019 as a continuation of U.S. Patent Application Ser. No. 15/491,803, filed on Apr. 19, 2017.

29.    The '012 patent is valid and enforceable under the United States Patent Laws.

30.    Crestone owns, by assignment, the entire right, title, and interest in and to the '012 patent, including the right to collect for past damages.

31.    The '012 patent is generally related to integrated circuit devices with integrated oscillators and external resonant elements.

32.    Modern integrated circuits need a clock source that combines the accuracy of a crystal reference with the flexibility of a tunable oscillator. Conventional crystal-based clocking can be slower to start, more sensitive to external component failure, and less flexible in producing different output frequencies.

33.    To avoid the disadvantages of relying exclusively on an external crystal or a tunable integrated oscillator to provide the appropriate frequency control, the '012 patent teaches a hybrid approach that uses both an internal oscillator and an external crystal to provide a system combining the advantages of each.  Specifically, the crystal is used as an external resonant reference element so that the circuit compares the crystal response against the tunable oscillator output and adjusts the oscillator frequency to maintain accurate, fault-tolerant operation.

34.    The '012 patent contains 4 independent claims and 20 total claims, covering processors and microcontrollers with integrated oscillators.  Claim 19 of the '012 patent reads:

> 19.  A system, comprising:
>
> a semiconductor device, comprising a first external pin and an internal oscillator; and
>
> an external resonant element coupled to the semiconductor device at least through the first external pin;
>
> wherein the internal oscillator comprises:
>
> a tunable oscillator communicatively coupled with the first pin and configured to provide an oscillation signal to a portion of the semiconductor device;
>
> a phase detector circuit communicatively coupled with an output of the tunable oscillator and an input to the internal oscillator; and
>
> an oscillator controller circuit configured to adjust frequency of the tunable oscillator based upon phase detection between output of the tunable oscillator and output of the external resonant element received at the input to the internal oscillator,
>
> wherein the oscillator controller circuit is configured to use the output of the external resonant element to adjust frequency of the tunable oscillator during the entire operation of the tunable oscillator.

35.    This claim, as a whole, provides significant benefits and improvements to the function of the system, e.g., improved reliability during start-up, improved accuracy compared

to other tunable internal oscillators, and fast startup and high-frequency stability for frequency output..

## U.S. PATENT NO. 8,261,072

36.    The '072 patent is titled "Method and system for secure external TPM password generation and use."  A true and correct copy of the '072 patent is attached as Exhibit B.

37.    The '072 patent issued to inventors Kerry D. Maletsky and Nathanael J. Bohlmann on September 4, 2012 from U.S. Patent Application Ser. No. 11/607,504, filed November 30, 2006, claiming ultimate priority to U.S. Provisional Application No. 60/785,870, filed March 24, 2006.

38.    The '072 patent is valid and enforceable under the United States Patent Laws.

39.    Crestone owns, by assignment, the entire right, title, and interest in and to the '072 patent, including the right to collect for past damages.

40.    The '072 patent is generally related to computer security.

41.    Traditional security mechanisms such as passwords, encryption keys, digital certificates, and firewalls, have numerous weaknesses that have made them increasingly insufficient to provide sufficient security in high-risk environments.

42.    As a result, trusted platform modules ("TPMs") have become increasingly employed as a superior solution embedded into product offerings to provide vastly enhanced security.  Additionally, several new devices that enhance security and user experience have been added, especially devices adding secure biometric capabilities.

43.    But even when a TPM is used in the platform, the use of devices external to the TPM creates opportunities for the detection of codes and secrets  when they are communicated,

requiring a tradeoff between security of the system and its accessibility for the user during normal operation.

44. In order to address those weaknesses, the '072 patent teaches the use of a unique technique to generate secure codes in a remote device of a system that are securely conveyed to the TPM without exposing them to software attack or malware during normal operation. TPM keys require usage authorization information to be attached to them for their associated use., and that usage authorization information is generated by the secure generator and sent to the TPM when the key is generated. Once received, the TPM can also be used to securely authenticate subsequent uses of the key, as both the remote device and the TPM recognize a common access code or secret.

45. The '072 patent contains 2 independent claim and 48 total claims, covering a trusted platform module. Claim 1 of the '072 patent reads:

1. A computer system comprising:

    one or more central processing units connected to one or more internal system busses;

    random access memory;

    read-only memory;

    at least one input/output adapter, which supports various I/O devices;

    a user interface adapter;

    a trusted platform module configured to perform operations comprising:

        receiving a secure access code from a remote device outside of the trusted platform module;

        receiving usage authorization information generated by a secure generator, the usage authorization information being attached to the secure access code;

        recognizing the secure access code; and

        using the secure access code as a parameter for various trusted platform module commands.

46.    This claim, as a whole, provides significant benefits and improvements to the function of the computing devices by markedly improving system security during normal operation without decreasing usability and accessibility for the user.

## U.S. PATENT NO. 9,228,534

47.    The '534 patent is titled "Systems and methods for operating media devices."  A true and correct copy of the '534 patent is attached as Exhibit C.

48.    The '534 patent issued to inventors Gene Sheridan, Hooman Kashef Hamadani, and Ramanathan Subramaniam on March 15, 2016 from U.S. Patent Application Ser. No. 13/106,135, filed May 12, 2011, claiming ultimate priority to U.S. Provisional Application Ser. No. 61/333,896, filed May 12, 2010.

49.    The '534 patent is valid and enforceable under the United States Patent Laws.

50.    Crestone owns, by assignment, the entire right, title, and interest in and to the '534 patent, including the right to collect for past damages.

51.    The '534 patent generally relates to interconnected media devices.

52.    Consumer electronics devices that access, store, and/or play various media have proliferated in recent years, as have wireless networks.  However, many types of conventional media players (such as TVs and audio systems) typically lack networking capability, while other network-enabled media players may require the addition expensive additional hardware such as a specialized processor or keyboard.  In addition, being able to have common control of these various devices in an efficient and non-cumbersome fashion is also a challenge, with even so-called "universal remote controllers" both requiring yet another device and typically being limited to line-of-sight operation.

53.     While the use of mobile computing devices such as smartphones and tablets has gone a long way towards solving the line-of-sight problem for networked devices, the problem remains for media devices that lack the ability to communicate with such mobile computing device.  And even when a media device was able to communicate with such a mobile computing device, the media device had to be able to provide a suitably usable interface on the mobile device that enabled control of the functions available on the media device.  But even such an interface was only able to provide a limited sort of control and did not permit the media player to access rich media from various sources.  Moreover, the mobile computing devices and media devices themselves, as well as their underlying communication protocols, would be frequently modified and improved—meaning that any solution that worked for a current set of devices might not be able to accommodate the next generation of devices.

54.     In an effort to solve these problems, the '534 patent teaches, in essence, using the a mobile computing device to bridge the two-way communication gaps between media sources and media players.  More specifically, the remote controller communicates separately with a media player and a media source, each using a distinct wireless communication link.  In communicating with the media player, the controller sends control commands and receives information from the media player about a set of controls that the media player supports.  In communicating with media sources, the controller sends media sourcing commands and receives information describing content available via that media source.  The controller analyzes information received from the media player to determine compatible content available via the media source and provides a user interface capable of controlling the media player based on the controls that the media player supports, selecting compatible content from the media source, and displaying compatible content from the media source.

11

55.    The '534 patent contains 3 independent claims and 17 total claims, covering remote control of media sources and media players.  Claim 6 of the '534 patent reads:

6.  A remote controller for communicating with a media source and a media player, the remote controller comprising:

a network interface for:

(i) communicating with the media player via a first wireless communication link,

wherein communicating comprises transmitting media player commands to the media player and receiving first information therefrom describing a set of controls supported by the media player; and

(ii) communicating with one or more media sources via a second wireless communication link

wherein communicating comprises transmitting media source commands to the one or more media sources and receiving therefrom second information describing content items available by the one or more media sources;

a processor for:

(i) analyzing the received first information so as to identify at least one feature of the media player

(ii) determining compatible content available on the one or more media sources wherein the compatible content is in a format that is compatible with a feature of the media player,

wherein the feature is selected from a group consisting of: volume control, picture control, rewind, and fast forward, and

(iii) building a user interface for controlling the media player using the set of controls

(iv) creating a user interface for controlling the media player and for selecting compatible content from the one or more media sources,

wherein the user interface is created based on the set of controls supported by the media player and built to display content from the one or more media sources determined to be compatible with the media player.

56.     This claim, as a whole, provides significant benefits and improvements to the function of a remote controller, e.g., improving future compatibility, maintaining existing compatibility, reducing the proliferation of unnecessary devices, and providing a protocol-agnostic system for unified device control and media interoperability from a single point.

## U.S. PATENT NO. 7,599,231

57.     The '231 patent is titled "Adaptive regulator for idle state in a charge pump circuit of a memory device."  A true and correct copy of the '231 patent is attached as Exhibit D.

58.     The '231 patent issued to inventors Marco Passerini, Stefano Sivero, Andrea Sacco, and Monica Marziani on October 7, 2009 from U.S. Patent Application Ser. No. 11/548,319, filed October 11, 2006.

59.     The '231 patent is valid and enforceable under the United States Patent Laws.

60.     Crestone owns, by assignment, the entire right, title, and interest in and to the '231 patent, including the right to collect for past damages.

61.     The '231 patent generally relates to generating adaptive idle voltage signals in electronic devices.

62.     Memory devices often need high voltages generated by charge-pumps for operations like programming, erasing, or reading, but switching between read and program operations can cause sudden voltage changes and charge-sharing effects.  These disturbances can create voltage spikes or drops on supply lines, which may degrade read, program, and erase performance.

63.     To address this problem, the '231 patent teaches a controlled transition scheme that uses an intermediate idle voltage state to reduce disturbances when high-voltage signals are applied or removed. Additionally, this  patent teaches compensating for undesirable voltage

supply line effects or disturbances by providing an idle state for memory cells at a voltage well below that required to turn on the switching stage, which isolates memory cells that are not being modified from disturbances in supply voltages.

64.    The '231 patent contains 3 independent claims and 19 total claims, covering apparatuses with modifiable memory elements.  Claim 12 of the '231 patent reads:

> 12.  An apparatus comprising:
>
> a read node to receive a first voltage;
>
> a modify node;
>
> a switching stage coupled between the read node and the modify node, the switching stage including a first node; and
>
> an adaptive voltage generator configured to apply a second voltage having a first value corresponding to a value of the first voltage to the modify node before the switching stage couples the first node to the modify node

65.    This claim, as a whole, provides significant benefits and improvements to the function of the electronic device by providing a modified idle state that reduces the undesirable effects of switching disturbances caused by sudden voltage changes in a line or node and allows for faster transitions between read, program and erase operations.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,771,012

66.    Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

67.    The '012 patent is valid and enforceable under the United States patent laws.

68.    Crestone owns, by assignment, all right, title, and interest in and to the '012 patent, including the right to collect for past damages.

69.    On information and belief, Samsung has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '012 patent by making, using, offering to sell, or selling within the

14

United States, or importing into the United States, one or more smartphones (including but not limited to the the Samsung Galaxy S25 Ultra) and solid-state hard drives (including but not limited to the Z-SSD 983 ZET) (collectively, the "'012 Accused Products").

70.    A claim chart demonstrating Samsung's infringement of certain exemplary claims of the '012 patent by the exemplary Samsung Galaxy S25 Ultra is attached hereto as Exhibit E.

71.    Samsung's '012 Accused Products infringe and continue to infringe one or more claims of the '012 patent during the pendency of the '012 patent.

72.    Samsung's infringement of the '012 patent was, and continues to be, done with knowledge of the '012 patent and with knowledge of Crestone's contention that Samsung is infringing the '012 patent.  On or about August 8, 2025, a representative of Crestone provided actual notice to Samsung of the '012 patent and Samsung's infringement thereof via the exemplary Samsung Galaxy S25 Ultra.  Samsung's infringement of the '012 patent is thus willful and deliberate at least as of that date, entitling Crestone to enhanced damages and attorneys' fees.

73.    Samsung's infringement of the '012 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

74.    Crestone has been damaged by Samsung's infringement of the '012 patent and will continue to be damaged unless Samsung is enjoined by this Court. Crestone has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Crestone, and public interest is not disserved by an injunction.

75.    Crestone is entitled to recover from Samsung all damages that Crestone has sustained as a result of Samsung's infringement of the '012 patent, including without limitation and/or not less than a reasonable royalty.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,261,072

76.     Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

77.     The '072 patent is valid and enforceable under the United States patent laws.

78.     Crestone owns, by assignment, all right, title, and interest in and to the '072 patent, including the right to collect for past damages.

79.     On information and belief, Samsung has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '072 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more smartphones (including but not limited to the Galaxy S26 Ultra, Galaxy S26+, Galaxy S26, Galaxy S25 Ultra, Galaxy S25 Edge, Galaxy S25, Galaxy S25+, and Galaxy Z Fold6), tablets (including but not limited to the Galaxy Tab S11 Ultra, Galaxy Tab S11, Galaxy Tab S10 Lite, Galaxy Tab A11+, Galaxy Tab A11+ 5G, Galaxy Tab S10 Ultra, and Galaxy Tab S10+), and laptop computers (including but not limited to the Galaxy Book6 Ultra, Galaxy Book6 Pro, Galaxy Book6, Galaxy Book5 Pro 360, Galaxy Book5 Pro, Galaxy Book5 360, Galaxy Book5, Galaxy Book4 Edge,  Galaxy Book4 Ultra, Galaxy Book5 Pro 360, Galaxy Book5 Pro, Galaxy Book5 360, Galaxy Book4) having a trusted platform module (collectively, the "'072 Accused Products").

80.     A claim chart demonstrating Samsung's infringement of certain exemplary claims of the '072 patent by the exemplary Samsung Galaxy Book6 is attached hereto as Exhibit F.

81.     Samsung's '072 Accused Products infringe and continue to infringe one or more claims of the '072 patent during the pendency of the '072 patent.

82.     Samsung's infringement of the '072 patent was, and continues to be, done with knowledge of the '072 patent and with knowledge of Crestone 's contention that Samsung is infringing the '072 patent.  On or about August 8, 2025, a representative of Crestone provided actual notice to Samsung of the '072 patent and Samsung's infringement thereof via the '072 Accused Products' use of a trusted platform module.  Samsung's infringement of the '072 patent is thus willful and deliberate at least as of that date, entitling Crestone to enhanced damages and attorneys' fees.

83.     Samsung's infringement of the '072 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

84.     Crestone has been damaged by Samsung's infringement of the '072 patent and will continue to be damaged unless Samsung is enjoined by this Court.  Crestone has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Crestone, and public interest is not disserved by an injunction.

85.     Crestone is entitled to recover from Samsung all damages that Crestone has sustained as a result of Samsung's infringement of the '072 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,288,534

86.     Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

87.     The '534 patent is valid and enforceable under the United States patent laws.

88.     Crestone owns, by assignment, all right, title, and interest in and to the '534 patent, including the right to collect for past damages.

89.    On information and belief, Samsung has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '534 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more Android-based smartphones (including but not limited to the Galaxy S26 Ultra, Galaxy S26+, Galaxy S26, Galaxy S25 Edge, Galaxy S25 Ultra, Galaxy S25+, Galaxy S25, Galaxy S24 FE, Galaxy S24, Galaxy S23 FE, Galaxy S23+, Galaxy Z Fold7, Galaxy X Flip7, Galaxy Z Flip7 FE, Galaxy Z Fold6, Galaxy Z Flip6, Galaxy Z Flip5, Galaxy A36 5G, Galaxy A26 5G, Galaxy A16 5G, Galaxy A57 5G, Galaxy S25 ultra 1TB, Galaxy A37 5G, and Galaxy A17 5G) and tablets (including but not limited to the Galaxy Tab S11 Ultra, Galaxy tab S11, Galaxy Tab S10 Lite, Galaxy Tab A11+, Galaxy Tab A11+ 5G, Galaxy Tab S10 Ultra, Galaxy Tab S10 FE+, Galaxy Tab S10+, Galaxy Tab S10 FE, Galaxy Tab S9, Galaxy Tab A9+, Galaxy Tab S10+ 5G,Galaxy Tab S10 FE 5G, and Galaxy Tab Active4 Pro) (collectively, the "'534 Accused Products").

90.    A claim chart demonstrating Samsung's infringement of certain exemplary claims of the '534 patent by the exemplary Samsung Galaxy S25 Ultra is attached hereto as Exhibit G.

91.    Samsung's '534 Accused Products infringe and continue to infringe one or more claims of the '534 patent during the pendency of the '534 patent.

92.    Samsung's infringement of the '534 patent was, and continues to be, done with knowledge of the '534 patent and with knowledge of Crestone 's contention that Samsung is infringing the '534 patent.  On or about August 8, 2025, a representative of Crestone provided actual notice to Samsung of the '534 patent and Samsung's infringement thereof via certain Samsung smartphones and tablets, including the Samsung Galaxy S25 Ultra.  Samsung's

infringement of the '534 patent is thus willful and deliberate at least as of that date, entitling Crestone to enhanced damages and attorneys' fees.

93. Samsung's infringement of the '534 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

94. Crestone has been damaged by Samsung's infringement of the '534 patent and will continue to be damaged unless Samsung is enjoined by this Court. Crestone has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Crestone, and public interest is not disserved by an injunction.

95. Crestone is entitled to recover from Samsung all damages that Crestone has sustained as a result of Samsung's infringement of the '534 patent, including without limitation and/or not less than a reasonable royalty.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,599,231

96. Crestone re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

97. The '231 patent is valid and enforceable under the United States patent laws.

98. Crestone owns, by assignment, all right, title, and interest in and to the '231 patent, including the right to collect for past damages.

99. On information and belief, Samsung has infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '231 patent by making, using, offering to sell, or selling within the United States, or importing into the United States, one or more smartphones containing TLC 3D NAND falash memory ("'231 Accused Products"), including as one example the Samsung Galaxy S25 Ultra.

19

100.    A claim chart demonstrating Samsung's infringement of certain exemplary claims of the '231 patent by the exemplary Samsung Galaxy S25 Ultra smartphone is attached hereto as Exhibit H.

101.    Samsung's '231 Accused Products infringe and continue to infringe one or more claims of the '231 patent during the pendency of the '231 patent.

102.    Samsung's infringement of the '231 patent was, and continues to be, done with knowledge of the '231 patent and with knowledge of Crestone 's contention that Samsung is infringing the '231 patent.  On or about May 29, 2026, a representative of Crestone provided actual notice to Samsung of the '231 patent and Samsung's infringement thereof via certain Samsung smartphones, including but not limited to the Samsung Galaxy S25 Ultra.  Samsung's infringement of the '231 patent is thus willful and deliberate at least as of that date, entitling Crestone to enhanced damages and attorneys' fees.

103.    Samsung's infringement of the '231 patent is exceptional and entitles Crestone to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

104.    Crestone has been damaged by Samsung's infringement of the '231 patent and will continue to be damaged unless Samsung is enjoined by this Court.  Crestone has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Crestone, and the public interest is not disserved by an injunction.

105.    Crestone is entitled to recover from Samsung all damages that Crestone has sustained as a result of Samsung's infringement of the '231 patent, including without limitation and/or not less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Crestone respectfully requests that this Court enter judgment in its favor

as follows and award Crestone the following relief:

a.   a judgment declaring that Defendants have infringed one or more claims of
     each Asserted Patent in this litigation pursuant to 35 U.S.C. § 271, *et seq.*;

b.   an award of damages adequate to compensate Crestone for infringement of
     each Asserted Patent by Defendants, in an amount to be proven at trial,
     including supplemental post-verdict damages until such time as Defendant
     cease their infringing conduct;

c.   a permanent injunction, pursuant to 35 U.S.C. § 283, prohibiting each
     Defendant and its officers, directors, employees, agents, consultants,
     contractors, suppliers, distributors, all affiliated entities, and all others acting
     in privity with that Defendant, from committing further acts of infringement;

d.   a judgment requiring each Defendant to make an accounting of damages
     resulting from its infringement of each Asserted Patent;

e.   enhanced damages for willful infringement;

f.   the costs of this action, as well as attorneys' fees as provided by 35 U.S.C.
     § 285;

g.   pre-judgment and post-judgment interest at the maximum amount permitted
     by law;

h.   all other relief, in law or equity, to which Crestone is entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: July 16, 2026

/s/ Clifford Chad Henson
C. Chad Henson (TX Bar No. 24087711)
**DEVLIN LAW FIRM LLC**
1411 North Trail Drive
Carrollton, TX  75006
Telephone: (302) 449–9010
Facsimile: (302) 353–4251
chenson@devlinlawfirm.com

*Attorney for Plaintiff Crestone IP Management, LLC*